UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VICTOR B.P.,

          Petitioner,

     v.

WARDEN,

          Respondent.

No. 1:26-cv-03736-TLN-CSK

A # 209-751-291

**ORDER**

This matter is before the Court on Petitioner Victor B.P.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.)  Respondent filed an opposition.  (ECF No. 8.)  For the reasons set forth below, the Petition is GRANTED and Respondent is ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

[1]     The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention.  The facts are not disputed here.  The parties agree that: Petitioner overstayed a tourist visa; 8 U.S.C. § 1226(a) governs his detention; and Respondent has not provided Petitioner a bond hearing while in detention.  (ECF No. 1 at 5; ECF No. 8 at 1.)

In June 2016, Petitioner entered the United States as a tourist on a visa.  (ECF No. 1 at 5; ECF No. 8-1 at 2.)  Petitioner also has a pending I-589 asylum application.  (ECF No. 8-2 at 2.)  On January 13, 2026, Petitioner was arrested for a probation violation on a 2020 theft conviction.  (ECF No. 8 at 1–2.)  On March 30, 2026, a judge released him on the probation violation and ordered two additional years of probation as well as restitution.  (ECF No. 1 at 7.)  On April 1, 2026, on the day of his release, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner.  (*Id.*)

On May 15, 2026, Petitioner filed the instant *pro se* Petition for Writ of Habeas Corpus.  (*Id.* at 1.)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release.  (*Id.* at 3–4.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

2

**III.    ANALYSIS**

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 20–21.)  The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a) and he is entitled to a bond hearing.  (ECF No. 1 at 5; ECF No. 8 at 1.)  However, Respondent contends Petitioner is required to exhaust his administrative remedies before filing a habeas petition.  (ECF No. 8 at 14.)  The Court begins with an analysis of prudential exhaustion and then turns to Petitioner's Fifth Amendment claim.

**A.    Prudential Exhaustion**

Respondent argues Petitioner is prudentially required to exhaust administrative remedies but has failed to do so.  (ECF No. 8 at 4.)  Respondent therefore requests the Court to dismiss the habeas petition or alternatively stay the proceedings.  (*Id.*)

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  *S.E.C. v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)).  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."  *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).  Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus."  *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds).  However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241."  *Id.*

"Courts may require prudential exhaustion if[:] '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'"  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).  Nevertheless, "there are a number of

3

exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

In consideration of the *Puga* factors, prudential exhaustion is not required here.  An administrative record is not necessary to resolve the due process questions presented by Petitioner.  Waiver of the prudential exhaustion requirement here will not encourage the deliberate bypass of the administrative scheme in future cases because Respondent has failed to identify the method by which Petitioner was required to exhaust his administrative remedies. (*See* ECF No. 8.)  Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the Government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).

Even if exhaustion were required, waiver would be appropriate here to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights.  *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025).  Petitioner is suffering irreparable harm as a result of his continued detention, which would unnecessarily continue without waiver of exhaustion.  Accordingly, the Court will not deny Petitioner's request for habeas relief for failure to exhaust administrative remedies.

> B.     Fifth Amendment Due Process Violation

The Fifth Amendment Due Process Clause prohibits Government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.    Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for almost a decade. At the time of Petitioner's detention, he was pursuing an asylum application. Moreover, a local judge did not revoke his liberty after a probation violation and, instead, ordered him released. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Respondent does not dispute Petitioner's liberty interest. (*See* ECF No. 8.) Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

*ii.    Process Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

5

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondent's actions detaining him. The decade that Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained without any opportunity to be heard as to the justification of his detention. For nearly two months, he has been separated from his family and community, unable to work, with no control over the conditions of his life. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal. After Petitioner was arrested for a probation violation, a judge found it appropriate to release Petitioner into the community with additional time on probation. Further, Respondent does not claim Petitioner is a danger to the community or a flight risk. Respondent fails to develop any substantive argument based on Petitioner's criminal history. Without any argument, let alone a showing by Respondent of a legitimate interest to detain Petitioner prior to

any order of removal, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest.  Absent procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Notice and custody determination hearings are routine processes for Respondent.  Indeed, they are the very processes contemplated under 8 U.S.C. § 1226(a), which Respondent agrees governs Petitioner's detention.  Any delay in detention (if justified) for the time to provide a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.  Nor does Respondent claim it would be unduly burdened.

Therefore, due process (as well as 8 U.S.C. § 1226(a)) confers Petitioner a right to a custody hearing before a neutral decisionmaker, at minimum.  Respondent argues "[u]nder [§] 1226(a), it is the detainee who must request the bond hearing."  (ECF No. 8 at 3.) However, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))).  Respondent is in control of Petitioner's custody and it is the Government's duty to provide sufficient process when depriving an individual of their liberty.  Petitioner has never been afforded a hearing to determine whether his custody is justified in two months of detention.  Thus, Petitioner has been deprived of an opportunity to be heard at a meaningful time and in a meaningful matter.  The Court finds a clear violation of the Fifth Amendment and Petitioner's procedural due process rights.

C.    Appropriate Relief

The appropriate relief in this case is immediate release.  "Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi*, 542 U.S. at 536); *see Preiser*, 411 U.S. at 484 ("the traditional function of the writ is to secure release from illegal custody.");

7

*Pinson v. Carvajal*, 69 F.4th 1059, 1070 (9th Cir. 2023) ("the history of habeas corpus demonstrates why release from confinement is the only available remedy for claims at the writ's core[.]").  The Government deprived Petitioner of the process owed him under § 1226(a), including a bond hearing before a neutral decisionmaker.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (describing the "extensive procedural protections" provided under § 1226(a)).

The Court vehemently rejects Respondent's argument that appropriate relief here is a bond hearing.  Respondent concedes that Petitioner is entitled to a bond hearing by law, but that his only barrier to a hearing was that he must request a hearing.  Respondent also now concedes that Petitioner has requested a hearing through his habeas petition.  (*See* ECF No. 8 at 3 ("the petition for writ of habeas corpus can be construed as Petitioner's request for a hearing.")).  Yet, in the two weeks since the petition was filed, Respondent has not stated his intention to schedule such a hearing, unless this Court orders him to provide such relief.  The Court declines to allow the Government to use § 1226(a) for its detention authority but not its protections.  The appropriate remedy for this violation is not to bring the Government into conformity with its governing statutes; it is to release Petitioner from unlawful custody.  *See Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025) (ordering release of detainee challenging his detention without a bond hearing and collecting cases); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D. W.Va. Feb. 4, 2026) (ordering release and rejecting the Government's argument that a bond hearing is the appropriate remedy).  Immediate release is the appropriate remedy.

### IV.  CONCLUSION

Petitioner is detained in violation of the Fifth Amendment and he must be released.  Accordingly, IT IS HEREBY ORDERED:

1.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED;

2.  Petitioner's Motion for Temporary Restraining Order (ECF No. 2) and Motion to Appoint Counsel (ECF No. 3) are DENIED as moot;

3.  Respondent must IMMEDIATELY RELEASE Petitioner Victor B.P. (A # 209-751-291)

from custody.  At the time of release, Respondent must return all of Petitioner's documents and possessions;

4. **Respondent must file a notice of compliance within two days of the electronic filing date of this Order**;

5. To avoid further irreparable harm and protect the public interest, Respondent is ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the Government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention.  *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present;

6. The Clerk is directed to serve the **Golden State Annex Detention Facility** with a copy of this Order; and

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 27, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9